**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| LISA FEATHER, STANLEY BEIERMANN, and HOLLY PYATT, on behalf of themselves, and all others similarly situated, and on behalf of the SSM PENSION PLANS, )<br><br>Plaintiffs, )<br><br>v. )<br><br>SSM HEALTH CARE CORPORATION, d/b/a SSM HEALTH, a Missouri Non-Profit corporation, *et al.*, )<br><br>Defendants. ) | No. 4:16-cv-01669-HEA |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................................2

     A.     Investigation of Claims, Filing of Initial Complaints & Consolidation.................2

     B.     Defendants' Motion to Dismiss and this Court's Order..........................................4

     C.     Mediation and the Proposed Settlement Agreement................................................5

     D.     The Proposed Settlement ........................................................................................6

         1.     Settlement Consideration ............................................................................6

         2.     Released Claims .........................................................................................8

         3.     Attorneys' Fees, Reimbursement of Expenses and Incentive
             Awards to the Named Plaintiffs ................................................................9

     E.     Notice to the Class Members ..................................................................................9

III.     THE COURT SHOULD APPROVE THE SETTLEMENT .........................................10

     A.     Legal Standard .....................................................................................................10

     B.     The Settlement is Fair, Reasonable and Adequate ...............................................11

         1.     Plaintiffs and Class Counsel Have Diligently Prosecuted the
             Action and Negotiated the Settlement Agreement at Arm's
             Length .......................................................................................................11

         2.     The Settlement Provides Adequate Relief ...............................................13

         3.     The Settlement Treats the Settlement Class Equitably Relative to
             Each Other ................................................................................................18

         4.     Reaction by the Settlement Class .............................................................19

IV.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ..............................20

     A.     Rule 23(a)'s Requirements are Satisfied .............................................................20

         1.     Numerosity................................................................................................20

         2.     Commonality.............................................................................................21

         3.     Typicality..................................................................................................21

4.      Adequacy ...............................................................................22

B.      The Settlement Class Satisfies the Requirements of Rule 23(b) ..........................23

C.      The Court Should Confirm Its Earlier Appointment of Counsel to
        Represent the Settlement Class...........................................................................26

V.      THE COURT SHOULD FIND THAT THE CLASS RECEIVED ADEQUATE
        NOTICE.............................................................................................................27

VII.    CONCLUSION ..................................................................................................28

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Adams v. Cradduck,*
No. 13-05074, 2016 WL 7664135 ................................................................................. 10, 16

*Advocate Health Care v. Stapleton,*
137 S. Ct. 1652 (2017) ....................................................................................*passim*

*In re Aquila ERISA Litigation,*
237 F.R.D. 202 (W.D. Mo. 2006) ........................................................................21

*Bonetti v. Embarq Mgmt. Co.,*
715 F. Supp. 2d 1222 (M.D. Fla. 2009) ....................................................... 10, 13

*Bradford v. AGCO Corp.,*
187 F.R.D. 600 (W.D. Mo.1999) .........................................................................22

*In re Broadwing, Inc. ERISA Litig.,*
252 F.R.D. 369 (S.D. Ohio 2006) .......................................................................26

*Calogiuri v. Symantec Corp.,*
855 F.3d 860 (8th Cir. 2017) ..............................................................................19

*In re Cendant Corp. Sec. Litig.,*
109 F. Supp. 2d 235 (D.N.J.2000) .......................................................................19

*In re Charter Communc'ns,*
No. 02-cv-1186, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ...........................14

*Cullan and Cullan LLC v. M-Qube, Inc.,*
2016 WL 5394684 (D. Neb. Sept. 27, 2016)......................................................27

*DeBoer v. Mellon Mortg. Co.,*
64 F.3d 1171 (8th Cir. 1995) ....................................................................... 15, 21

*Donaldson v. Pillsbury Co.,*
554 F.2d 825 (8th Cir. 1997) ..............................................................................22

*Feather v. SSM Health,*
No. 18-2823 (8th Cir. Oct. 31, 2018) ............................................................*passim*

*Garbaccio v. St. Joseph's Hospital & Medical Center and Subsidiaries,*
No. 2:16-cv-02740(JMC)(JBC) (D.N.J. 2018) ....................................................17

*Griffin v. Flagstar Bancorp. Inc.*,
   No. 2:10-cv-10610 2013 WL 6511860 (E.D. Mich. 2013) ...................................24

*Grunin v. Int'l House of Pancakes*,
   513 F.2d 114 (8th Cir. 1975) ............................................................................15

*Hashw v. Dep't Stores Nat'l Bank*,
   182 F. Supp. 3d 935 (D. Minn. 2016) ...............................................................15

*Hodges v. Bon Secours Health System, Inc.*,
   No. 1:16-cv-01079-RDB (D. Md. 2017) .............................................................17

*In re IKON Office Solutions*,
   191 F.R.D. 457 (E.D. Pa. 2000) ........................................................................24

*Jones v. Novastar Fin., Inc.*,
   257 F.R.D. 181 (W.D. Mo. 2009) ................................................................24, 26

*Kaplan v. Saint Peter's Healthcare Sys.*,
   810 F.3d 175 (3d Cir. 2015) ................................................................................3

*Keil v. Lopez*,
   862 F.3d 685 (8th Cir. 2017) ............................................................................19

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
   No. 15-CV-1113 (VAB), 2016 WL 6542707 (D. Conn. Nov. 3, 2016) ...............17

*King v. Ranieri Constr., LLC et al.*,
   No. 14-cv-1828, 2015 WL 631253 (E.D. Mo. Feb. 12, 2015) ............................12

*Krueger v. Ameriprise Financial, Inc.*,
   304 F.R.D. 559 (D. Minn. 2014).........................................................................24

*Kruger v. Novant Health, Inc.*,
   No. 1:14-cv-208, 2016 WL 6769066 (M.D.N.C. Sep. 29, 2016) .........................19

*Lann v. Trinity Health Corp.*,
   No. 14-cv-2237-PJM (D. Md. 2017)...................................................................17

*Lees v. Anthem Ins. Cos.*,
   No. 13-1411, 2015 WL 3645208 (E.D. Mo. June 10, 2015) ...............................19

*Martinez v. Medicredit, Inc.*,
   No. 4:16CV01138 ERW, 2018 WL 2223681 (E.D. Mo. May 15, 2018)..............19

*Medina v. Catholic Health Initiatives*,
   877 F.3d 1213 (10th Cir. 2017)....................................................................14, 16

*In re Mercy Health ERISA Litig.*,
    No. 16-441 (S.D. Ohio Nov. 28, 2018) ...............................................................17

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010)................................................................18

*Meyers v. Dtna Trucks North America, LLC*,
    No. 14-2361, 2014 WL 12531121 (W.D. Tenn. Oct. 8, 2014)........................22, 25

*Mullane v. Central Hanover Bank and Trust Co.*,
    339 U.S. 306 (1950) ...........................................................................................27

*Netzel v. West Shore Grp.*,
    No. 16-cv-2552, 2017 WL 1906955 (D. Minn. May 8, 2017) ........................10, 13

*Newman v. CheckRite Cal., Inc.*,
    1996 WL 1118092 (E.D. Cal. Aug. 2, 1996)........................................................21

*Nicholson v. Franciscan Missionaries of Our Lady Health Sys.*,
    No. 16-258 (M.D. La. Feb. 6, 2018) ...................................................................17

*Nortel Networks Corp. ERISA Litig.*, No. 03-md-1537, 2009 WL 3294827 (M.D.
    Tenn. Sept. 2, 2009) ..........................................................................................26

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ...........................................................................................24

*Paxton v. Union Nat. Bank*,
    688 F.2d 552 (8th Cir. 1982) .............................................................................23

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ......................................................................14, 27

*Prater v. Medicredit, Inc.*,
    No. 4:14-CV-00159-ERW, 2015 WL 8331602 (E.D. Mo. Dec. 7, 2015) ............19

*Prof'l Firefighters Ass'n Local 385 v. Zalewski*,
    678 F.3d 640 (8th Cir. 2012) .............................................................................11

*Ramsey v. Sprint Comm. Co., L.P.*,
    No. 11-cv-3211, 2012 WL 6018154 (D. Neb. Dec. 3, 2012) .........................13, 15

*Rankin v. Rots*,
    220 F.R.D. 511 (E.D. Mich. Apr. 16, 2004)........................................................26

*Rawa v. Monsanto Company*,
    No. 4:17-CV-1252, 2018 WL 2389040 (E.D. Mo. May 25, 2018) ......................12

*Risch v. Natoli Engineering Co., LLC*,
    No. 11-cv-1621, 2012 WL 4357953 (E.D. Mo. Sept. 24, 2012) ..................................... 12, 19

*Rollins v. Dignity Health*,
    830 F.3d 900 (9th Cir. 2016) ............................................................................................3

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) ............................................................................................24

*Schoenbaum v. E.I. Dupont De Nemours and Co.*,
    No. 4:05-cv-1108, 2009 WL 4782082 (E.D. Mo. Dec. 8, 2009)..........................................10

*Schwartz v. TXU Corp.*,
    No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)....................................18

*Shanehchian v. Macy's Inc.*,
    No. 07-cv-828, 2011 WL 883659 (S.D. Ohio Mar. 10, 2011) .............................................24

*Simmons v. Enter. Holdings, Inc.*,
    No. 4:10CV00625AGF, 2012 WL 2885919 (E.D. Mo. July 13, 2012) ................................19

*Smith v. Aon*,
    238 F.R.D. 609 (N.D. Ill. 2006)...................................................................................25, 26

*Speer v. Cerner Corp.*,
    2016 WL 5444648 (W.D. Mo. Sept. 27, 2016) ....................................................................20

*Stanford v. Foamex L.P.*,
    263 F.R.D. 156 (E.D. Pa. 2009)........................................................................................26

*Stapleton v. Advocate Health Care Network*,
    817 F.3d 517 (7th Cir. 2016) ...........................................................................................3

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ..........................................................................................15

*Thole v. U.S. Bank, N.A.*,
    139 S. Ct. 306 (2018) .....................................................................................................15

*Thole v. U.S. Bank, N.A.*,
    873 F.3d 617 (8th Cir. 2017) ..........................................................................................15

*Tucker v. Baptist Health System, Inc.*,
    No. 2:15-cv-00382-MHH (N.D. Al. 2017).........................................................................18

*Tussey v. ABB, Inc.*,
    No. 06-04305, 2007 WL 4289694 (W.D. Mo. Dec. 3, 2007)................................................22

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*,
  716 F.3d 1057 (8th Cir. 2013) ................................................................. 10, 11

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ................................................................................ 25

*Wildman v. Amer. Cent. Serv., LLC*,
  No. 16-cv-737, 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) ..................... 20, 22

*In re Williams Cos. ERISA Litig.*,
  231 F.R.D. 416 (N.D. Okla. 2005) ................................................................ 21

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  396 F.3d at 934 ............................................................................................. 10

*Yost v. First Horizon National*,
  No. 08-2293, 2011 WL 2182262 (W.D. Tenn. Jun. 3, 2011) ..................... 24, 26

**RULES**

Fed. R. Civ. P. 12(b) ..................................................................................... 4, 5

Fed. R. Civ. P. 23(a) ................................................................................. *passim*

Fed. R. Civ. P. 23(b) ................................................................................. *passim*

Fed. R. Civ. P. 23(e) ................................................................................. *passim*

Fed. R. Civ. P. 23(g) .................................................................................. 23, 26

**STATUTES**

29 U.S.C. § 1002(33)(C)(i) ............................................................................... 4

29 U.S.C. § 1132(a)(2) .................................................................................... 25

29 U.S.C. § 1132(a)(3) .................................................................................... 25

California Civil Code § 1542 ............................................................................. 8

**OTHER AUTHORITIES**

H. Newberg, *Class Actions,* § 3.13 (1977) ....................................................... 21

Plaintiffs Lisa Feather, Stanley Beiermann, and Holly Pyatt ("Plaintiffs" or "Named Plaintiffs") submit this Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Certification of Settlement Class ("Final Approval Memorandum").  The factual basis for the motion is contained in the Joint Declaration of Ron Kilgard, Mark K. Gyandoh, Karen L. Handorf, Mark Kindall and Matthew H. Armstrong in Support of Plaintiffs' Motion for (1) Final Approval of Class Action Settlement and Certification of Settlement Class, (2) Award of Attorneys' Fees and Reimbursement of Expenses, and for Incentive Awards to Named Plaintiffs, Exhibit 3,[1] and the First Amended Complaint ("Amended Complaint" or "Am. Compl."), ECF No. 78, and the other pleadings and documents included on the docket of this Action.[2]

## I.      INTRODUCTION

Plaintiffs' central contention in this litigation was that Defendants were failing to operate the Retirement Plan for Employees of SSM Health Care, the Retirement Plan for Employees of St. Mary's Hospital, Centralia, Illinois, and the Retirement Plan for Employees of Certain Illinois Entities Related to SSM Health Care (collectively, "the Plans"), in accordance with ERISA.[3]  In particular, Plaintiffs alleged that the Plans did not meet ERISA's minimum funding requirements,[4] did not pay premiums to the Pension Benefit Guaranty Corporation ("PBGC"), and the fiduciaries failed to provide information to the Plans' participants as required by ERISA and made lower lump

---

[1] All references to "Exhibit" or "Ex." are to the exhibits attached to this Final Approval Memorandum.
[2] Capitalized terms not otherwise defined in this Final Approval Memorandum shall have the same meaning ascribed to them in the Class Action Settlement Agreement ("Settlement Agreement" or "Settlement"), attached hereto as Exhibit 1.
[3] "ERISA" refers to the federal Employee Retirement Income and Security Act of 1974, as amended.
[4] In the alternative, Plaintiffs alleged causes of action under state law.  *See* Am. Compl., Counts X (contract), XI (unjust enrichment), and XII (breach of fiduciary duty under state law).

sum payments to participants than ERISA would require as a result of using outdated actuarial assumptions.

Plaintiffs engaged in arm's-length settlement discussions with Defendants and reached a proposed agreement with the assistance of an experienced JAMS mediator, Robert Meyer. Following preliminary approval of the Settlement, ECF No. 121, and notice to the Settlement Class, Plaintiffs now request that the Court give final approval to the Settlement, certify the Settlement Class, confirm the appointment of Class Counsel and Class Representatives, and approve the substance and procedure employed to notify the Class.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Investigation of Claims, Filing of Initial Complaints & Consolidation

Plaintiffs Stanley Beiermann, Marilyn Liddell and Holly Pyatt filed the initial suit in this matter on April 4, 2016 (No. 16-00460).  Their complaint alleged that the Retirement Plan for Employees of SSM Health Care was not exempt from ERISA under the "church-plan" exception (Count I) and was being operated in violation of several specific ERISA requirements: reporting and disclosure provisions (Count II), minimum funding requirements (Count III), requirements concerning establishment by written instrument (Count IV), and fiduciary duty requirements (Count V).  *Beiermann* Compl., ECF No. 1.  Four days later, Lisa Feather filed a complaint in the Southern District of Illinois (No. 16-00393) alleging that the Plans were being operated as ERISA exempt "church plans."  In addition to the five counts in the *Beiermann* complaint, the *Feather* complaint included counts for improper calculation of lump-sum benefits (Count IV), failure to establish a trust meeting the requirements of ERISA (Count VI), a claim for clarification of future benefits (Count VII), a claim for civil penalties (Count VIII), and a claim for declaratory relief that, in the event the Plans qualified as "church plans," the statutory exemption violated the Establishment Clause of the First Amendment (Count X).  *Feather*

Compl., ECF No. 1.  Plaintiffs in the separate actions agreed to pursue the two cases jointly and

Plaintiffs Beiermann, Liddell and Pyatt dismissed their initial action without prejudice.  Rule 41

Notice of Dismissal, *Beiermann*, ECF No. 17.

Defendants moved to transfer the *Feather* action from the Southern District of Illinois to

this Court, and the motion was granted on October 25, 2016.  Mem. & Order, *Feather*, ECF No.

58.  On October 26, 2016, the case was transferred, given a new case number (No. 16-1669) and

assigned to Judge Autrey.  Defendants filed a motion to stay the case pending the Supreme

Court's decision in *Advocate Health Care Network v. Stapleton* (*Advocate*), 137 S. Ct. 1652

(2017), which consolidated three church plan cases then pending before the Court (considering

lower court rulings in *Stapleton v. Advocate Health Care Network*, 817 F.3d 517 (7th Cir. 2016);

*Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175 (3d Cir. 2015); and *Rollins v. Dignity

Health*, 830 F.3d 900 (9th Cir. 2016)). ECF No. 62. This Court granted the motion on December

20, 2016.  ECF No. 66.  The Supreme Court issued its decision in the church plan cases on June

5, 2017, holding that pension plans need not be established by churches in order to qualify as

ERISA-exempt church plans, although they still had to satisfy other conditions.  *Advocate,* 137

S. Ct. 1652.

The Court held a status conference with the parties on July 19, 2017 (ECF No. 71), after

which the parties proposed a schedule for discovery and the filing of an amended complaint and

response (ECF No. 72).  The parties also submitted a stipulated protective order (ECF No. 73) to

facilitate document discovery, which the Court granted on August 28, 2017 (ECF No. 74).

On August 30, 2017, the Court issued an order setting a schedule and appointing Keller

Rohrback L.L.P. ("Keller Rohrback") and Kessler Topaz Meltzer & Check, LLP ("KTMC") as

Interim Lead Class Counsel Committee Co-Chairs; Cohen Milstein Sellers & Toll PLLC

3

("Cohen Milstein") and Izard, Kindall & Raabe LLP ("IKR") as Interim Lead Class Counsel

Committee Members, and Armstrong Law Firm LLC as Interim Liaison Class Counsel.  Order

Setting Prelim. Schedule of Proceedings & Appointing Interim Class & Liaison Class Counsel

¶ 7, ECF No. 75.  In accordance with the approved schedule, Plaintiffs Lisa Feather, Stanley

Beiermann and Holly Pyatt filed the Amended Complaint on September 6, 2017.[5]

While the Supreme Court's ruling in *Advocate* foreclosed Plaintiffs' argument that the

Plans at issue were not entitled to the ERISA "church plan" exemption because they had not

been "established" by a church, *Advocate* did not foreclose alternative arguments, including that

the Plans were not church plans because they were not "maintained by an organization . . . the

principal purpose or function of which is the administration or funding of a [retirement] plan . . .

."  ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).  The Amended Complaint alleged that the

Plans were maintained by SSM, and that SSM was not a principal purpose organization, since its

principle purpose was to provide healthcare, not administer or fund a retirement plan.  Am.

Compl. ¶ 108.  Accordingly, the Amended Complaint alleged that the Plans were not entitled to

the "church plan" exemption and contained most of the same counts as the initial *Feather*

Complaint (and all of the Counts of the *Beiermann* Complaint).  *Id.* ¶¶ 150-247.  In addition, and

in the alternative, in the event the Plans were found to be exempt from ERISA, Plaintiffs alleged

claims for breach of contract (Count X), unjust enrichment (Count XI) and breach of fiduciary

duty (Count XII) under state law.  *Id.* ¶¶ 248-91.

**B.  Defendants' Motion to Dismiss and this Court's Order**

On November 6, 2017, Defendants moved to dismiss the Amended Complaint.  ECF

No. 82.  The motion to dismiss was based on both Federal Rule of Civil Procedure ("Rule")

---

[5] Marilyn Liddell was not named as a plaintiff on the Amended Complaint because she passed away on July 25, 2016.

12(b)(1) (lack of standing) and 12(b)(6) (failure to state a claim). *Id.* Plaintiffs opposed the motion on January 5, 2018 (ECF No. 90), and Defendants filed a reply brief on February 5, 2018 (ECF No. 91). The United States intervened to brief the question of the constitutionality of the church plan exemption. ECF No. 92. Pursuant to a special order of the Court, oral argument on the motion to dismiss was held at DeSmet Jesuit High School on April 3, 2018. ECF No. 94. On April 23, 2018, the Court issued an Order dismissing Count IX of the Amended Complaint and finding that the church plan exemption did not violate the Establishment Clause. ECF No. 100. However, on July 23, 2018, the Court vacated its April 23, 2018 Order (ECF No. 100) and dismissed the Amended Complaint in its entirety under Rule 12(b)(1) on the grounds that Plaintiffs lacked standing (ECF No. 101). Plaintiffs filed a timely notice of appeal on August 21, 2018. ECF No. 103.

## C.  Mediation and the Proposed Settlement Agreement

Following the Court's ruling and Plaintiffs' appeal, the parties had preliminary discussions concerning the possibility of reaching a settlement in mid-September 2018. On September 24, 2018, the parties retained Robert Meyer, an independent JAMS mediator who had successfully mediated several other cases involving ERISA's "church plan" exemption. The parties scheduled an in-person mediation session for October 19, 2018 in California. Exhibit 3 ¶ 27. Plaintiffs filed a Motion for Extension of Time with the Eighth Circuit to delay the filing of their opening brief, which was granted by the Court on September 26, 2018. *Id.*

In preparation for the mediation, Interim Class Counsel obtained additional information from Defendants concerning the Plans' funding levels and actuarial assumptions, as well as information concerning lump-sum distributions that had been made from the Plans. Interim Class Counsel also consulted with an actuarial expert concerning the adequacy of the Plans' funding levels. *Id.* ¶ 28.

The mediation took place as scheduled on October 19, 2018, and lasted all day, with the parties negotiating back-and-forth on each significant point. *Id.* ¶ 29.  Once the parties agreed on all significant terms affecting the Class, the mediator made a proposal, ultimately accepted by all parties, concerning SSM's payment of up to $500,000 to Class Counsel for attorneys' fees, expenses, and incentive awards for the Named Plaintiffs. *Id.* ¶ 30.  At the conclusion of the negotiations, the parties signed a term sheet that included all of the key terms of the Settlement. *Id.*

Following the mediation, Plaintiffs moved for a limited remand from the Eighth Circuit to permit the District Court to evaluate the proposed settlement, and filed a Motion for an Indicative Ruling Regarding a Fairness Hearing with this Court.  ECF No. 107.  As a result, the Eighth Circuit granted the limited remand motion, but retained jurisdiction over the appeal.  Order, *Feather v. SSM Health*, No. 18-2823 (8th Cir. Oct. 31, 2018). The parties then began to negotiate the text of a final settlement agreement.  A final version of the Settlement Agreement was completed and signed on January 16, 2019.  Exhibit 3 ¶ 33.

## D.  The Proposed Settlement

The following summarizes the principal terms of the Settlement Agreement.

### 1.  Settlement Consideration

- *Cash Contribution to the Plans:*  For Plan years 2019-2022, SSM will make annual cash contributions to the Plans of a minimum of $15 million per year, for a total of $60 million (although SSM may satisfy this obligation in full by making payments totaling $50 million prior to the end of Plan Year 2020). SSM will allocate these contributions among the Plans to attempt to have the Plans funded equally on a percentage basis, funding the Plan with the lowest funding percentage first.  Any amount paid in excess of $15 million during the calendar years of 2019, 2020 and 2021 maybe be used to reduce subsequent contributions. Exhibit 1 § 7.1.1.

6

- ***Benefits Commitment:***  During a period of ten (10) years, commencing on October 19, 2018, if the Plans' Trust becomes insufficient to pay benefits as they are then due, SSM will contribute sufficient funds to the Plans to pay the Accrued Retirement Benefit then currently payable to participants under the terms of the Plans. *Id.* § 8.1.

- ***Plan Mergers:***  If, at any time during a period of ten years commencing on October 19, 2018, any of the Plans is merged with or into another plan, adopted by additional employers, or consolidated with another plan, participants and beneficiaries in the Plan will be entitled to an Accrued Retirement Benefit post-merger, adoption, or consolidation event that is no less than they enjoyed before that event. *Id.* § 8.2.

- ***Plan Amendment and Termination:*** If SSM amends or terminates any of the Plans at any time during a period of ten years commencing on October 19, 2018, such amendment or termination shall not result in a reduction of any participant's or beneficiary's Accrued Retirement Benefit, as defined by the Plans. *Id.* § 8.3.

- ***Additional Payment to Certain Settlement Class Members Who Took Lump Sum Distributions:***  The Amended Complaint included allegations that the Plans made distributions to participants who elected to take a lump sum payment that were less than they would have been, had ERISA's mandated actuarial assumptions been used to calculate the payments.  Am. Compl. ¶¶ 70-72, 175-87.  As determined through discovery, at least 5,354 participants received voluntary lump sum distributions. Exhibit 1 at Ex. A.  Under the Settlement, each of these eligible Settlement Class Members as described in the Settlement Agreement will receive an additional $115.00 payment from the Plans as a lump sum distribution.  Exhibit 1 § 7.1.2.

- *Cost of Notice:*  The Settlement Agreement provides that SSM will pay for the cost of providing the Court-approved notice to Settlement Class members. *Id.* § 7.2.

### 2.  Released Claims

Under the proposed Settlement, Plaintiffs and Settlement Class members will fully, finally, and forever release any and all claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, expenses and costs arising out of the allegations of the Amended Complaint by any member of the Settlement Class.[6]  The claims released in the Settlement Agreement do not include:

i.    Any rights or duties arising out of the Settlement Agreement, including the express warranties and covenants in the Settlement Agreement;

ii.   Individual claims for benefits brought pursuant to applicable Plan documents that do not arise out of the allegations of the Amended Complaint, provided that no Settlement Class member shall challenge any of the Plans' status as a Church Plan exempt from ERISA or claim that ERISA's requirements relating to lump sum calculations apply to past or future lump-sum distributions from the Plans;

iii.  Claims related to any other plan that is merged, adopted, or consolidated into any of the SSM Plans after the Effective Date of the Settlement;

iv.   Any claim arising under ERISA with respect to any event occurring after: the Internal Revenue Service issues a written ruling that the Plans do not qualify as church plans; the Plans' sponsor elects for a Plan to be governed by ERISA; a court of law issues a

---

[6] Exhibit 1 § 3. The Settlement Agreement also provides that Plaintiffs and the Settlement Class will expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides: A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor and any and all provisions, rights and benefits of any similar statute, law or principle or common law of the United States, any state thereof, or any other jurisdiction. *Id.* § 3.4 (citing Cal. Civ. Code § 1542 (2019)).

8

definitive and final ruling that a Plan is not a church plan; the Roman Catholic

Church no longer claims to be associated with SSM; or an amendment to ERISA is

enacted and becomes effective as a law of the United States eliminating the church

plan exemption. Exhibit 1 § 3.2.1-3.2.4.

### 3. Attorneys' Fees, Reimbursement of Expenses and Incentive Awards to the Named Plaintiffs

The Settlement provides that Class Counsel would seek Court approval to receive an award

of reasonable attorneys' fees, out of pocket expenses and incentive awards for Plaintiffs.  Exhibit 1

§ 7.1.3.  The Settlement further provides that SSM will cause any such award to be paid *in addition*

*to* the other monetary terms set forth in the Settlement Agreement.  The Settlement Agreement is

not contingent upon the Court's award of attorneys' fees or expenses or incentive awards to the

Named Plaintiffs.  *Id.* § 7.1.5.

### E.  Notice to the Class Members

The Settlement required SSM to provide the Class with the Court-approved notice of the

Settlement, using the last-known address of each Settlement Class member in the possession of

the Plans' record-keeper.  *Id.* ¶ 2.2.3.  The Class Notice, Exhibit 7, informed the Class members

about the Action, the terms of the Settlement, the amounts that would be requested for attorneys'

fees, expenses and incentive awards, and the procedures for objecting to the Settlement.  In

addition, information concerning the Settlement, including the Amended Complaint, the Class

Notice, the Settlement and other key documents in the Action, was made available online at

www.kellersettlements.com. Exhibit 1 § 2.2.4; Exhibit 3 ¶ 48.

On February 19, 2019, the Class Notice was mailed to 65,864 Settlement Class members.

*See* Decl. of Abigail Schwartz for Rust Consulting, Inc. ¶ 13, Exhibit 2.  As of May 3, 2019,

Class Notice had been mailed to a total of 64,373 Settlement Class members. *Id.* ¶¶ 13-14.  This

number includes 10,974 Class Notices that were re-mailed upon receipt of an updated address. *Id.* ¶¶ 14-15.  As of May 3, 2019, Class Counsel had received and responded to 187 e-mails and phone inquiries from Settlement Class members.  Exhibit 3 ¶ 51.

The deadline for filing objections to the proposed settlement is May 23, 2019.  Am. Prelim. Approval Order ¶ 8.  As of the date of the filing of this Final Approval Memorandum, zero Settlement Class members, out of a total class of more than 65,000, have filed objections.

### III.    THE COURT SHOULD APPROVE THE SETTLEMENT

**A.  Legal Standard**

A class action settlement is a private contract negotiated between the parties that is "presumptively valid."  *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (citation omitted).  "Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion. . . ."  *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005).  In doing so, courts look for "glaring substantive or procedural deficiencies" and consider whether the "settlement carries the hallmarks of collusive negotiation or uninformed decision-making, is unduly favorable to class representatives or certain class members, or excessively compensates attorneys."  *Adams v. Cradduck*, No. 13-05074, 2016 WL 7664135, at *3 (citing *Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05-cv-1108, 2009 WL 4782082, at *3 (E.D. Mo. Dec. 8, 2009)).  Here, the Settlement displays no deficiencies and was reached after hard-fought litigation and arm's-length negotiations by experienced counsel with the assistance of a highly-regarded and sophisticated mediator.  *Netzel v. West Shore Grp.*, No. 16-2552, 2017 WL 1906955, at *6 (D. Minn. May 8, 2017) (where settlement was negotiated by counsel with extensive experience, court presumed it was "the product of arm's length negotiations"); *see also Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009) ("If the parties are

represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.").

To grant final approval, a court must determine that a settlement is "fair, reasonable and adequate." *In re Uponor, Inc.*, 716 F.3d at 1063 (citation omitted).  The recent amendments to Rule 23(e) codified caselaw interpreting this standard, directing courts to consider the following factors in determining whether a proposed settlement satisfies the "fair, reasonable and adequate" standard:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). A district court has broad discretion in assessing the weight and applicability of the factors to be considered.  *Prof'l Firefighters Ass'n Local 385 v. Zalewski*, 678 F.3d 640, 645 (8th Cir. 2012).  As set forth below, the Settlement is fair, reasonable and adequate and should be approved.

## B.  The Settlement is Fair, Reasonable and Adequate

### 1.  Plaintiffs and Class Counsel Have Diligently Prosecuted the Action and Negotiated the Settlement Agreement at Arm's Length

Plaintiffs and Class Counsel have diligently prosecuted this Action for over three years.

Prior to filing the complaints, Class Counsel engaged in extensive factual and legal research pertaining to the claims, which ultimately resulted in the filing of detailed complaints. Exhibit 3 ¶¶ 18-19.  As discussed above, Plaintiffs substantially revised their initial complaints following the Supreme Court's ruling in *Advocate*, including the addition of state law claims.  *Id.* ¶ 23. Plaintiffs opposed Defendants' motion to dismiss and filed a prompt appeal after the Court granted the motion.  *Id.* ¶¶ 24-26.

While the appeal was pending, Plaintiffs engaged in a mediation process that included review of confidential documents concerning the Plans' funding levels and actuarial assumptions, as well as information concerning lump-sum distributions.  *Id.* ¶ 28.  As a result of Class Counsel's initial investigation, their review of the confidential materials, and the motion to dismiss briefing, Plaintiffs and Class Counsel entered into Settlement discussions with a clear understanding of the strengths and weaknesses of their case.  *See Rawa v. Monsanto Co.*, No. 17-1252, 2018 WL 2389040, at *7 (E.D. Mo. May 25, 2018) (approving settlement when negotiated by "experienced counsel familiar with the legal and factual issues of the case").[7]

Class Counsel also has in-depth knowledge of the legal framework applicable to this case. Plaintiffs' attorneys have decades of experience prosecuting, settling, and trying ERISA cases on behalf of retirement plan participants, including direct experience litigating the contours of the church plan exception.  Exhibit 3 ¶¶ 11-17. Because the Settlement was negotiated by experienced counsel, there is a presumption that it was "the product of arm's length

---

[7] *See also Risch v. Natoli Eng'g Co.*, No. 11-1621, 2012 WL 4357953, at *3 (E.D. Mo. Sept. 24, 2012) (approving settlement when the parties engaged in "extensive fact discovery, exchanging and reviewing significant numbers of documents" including "all documents necessary to evaluate the class claims and damages"); *King v. Ranieri Constr., LLC*, No. 14-1828, 2015 WL 631253, at *3 (E.D. Mo. Feb. 12, 2015) (approving settlement where "parties engaged in settlement negotiations and exchanged a 'large amount of information and documents' for a month before submitting the proposed settlement") (citation omitted).

negotiations." *Netzel*, 2017 WL 1906955, at *6; *see also Bonetti*, 715 F. Supp. 2d at 1227.

### 2.  The Settlement Provides Adequate Relief

The amendments to Rule 23(e) direct the Court to consider the adequacy of the relief provided by the Settlement, taking into account several key factors:  the costs, risks and delay that would result from further litigation; the ability to distribute Settlement funds to the Class in an effective way; and the provisions of the Settlement related to attorneys' fees.

The proposed Settlement provides several real, substantial benefits to Class Members. First, Defendants have agreed to contribute between $50-60 million to the Plans over the course of the next four years, representing substantial additional funding.  Second, and equally important, SSM has agreed to guarantee full payment of benefits for a period of 10 years.  This is similar to a 10-year insurance policy on the funding for the Plans—something that would cost millions of dollars each year if the Plans attempted to purchase such a policy.  Finally, Defendants have agreed to pay an additional $115.00 to each eligible Class Member as described in the Settlement Agreement who took a lump-sum payment from the Plans. Exhibit 1 § 7.1.2, Ex. A.

Understandably, the benefits of the Settlement, while real and substantial, do not provide the same security for Plan participants as the protections provided by ERISA itself.  However, in considering the Settlement's fairness, a court must consider the challenges that plaintiffs would face in prevailing on their claims.  *See*, *e.g.*, *Ramsey v. Sprint Commc'ns Co.*, No. 11-3211, 2012 WL 6018154, at *3 (D. Neb. Dec. 3, 2012).  When the Settlement's benefits are considered in light of the factors set forth in Rule 23(e)(2)(C), the adequacy of the Settlement is apparent.

### a.  The Cost, Risk and Delay of Further Litigation

Even before the amendments to Rule 23(e) went into effect, "[t]he possible length and complexity of further litigation is a relevant consideration to the trial court in determining

whether a class action settlement should be affirmed." *In re Charter Commc'ns, Inc. Sec. Litig.*, No. 02-1186, 2005 WL 4045741, at *8 (E.D. Mo. June 30, 2005) (citation omitted).  The history of the litigation to date demonstrates that the issues are novel and complicated.  When the original complaints were filed in April 2016, the Third and Seventh Circuits had unanimously determined that pension plans not initially established by a church could not qualify for the church plan exemption, and the Ninth Circuit, again without dissent, agreed on July 26, 2016.  Despite the absence of a circuit split—indeed, there was not even a split among circuit court *judges*, since all three decisions were unanimous—the Supreme Court granted certiorari and unanimously reversed all three rulings in June 2017, while Plaintiffs were preparing the Amended Complaint.  While Plaintiffs were briefing the motions to dismiss, the Tenth Circuit issued *Medina v. Catholic Health Initiatives*, 877 F.3d 1213 (10th Cir. 2017), addressing the issues left unresolved by the Supreme Court in *Advocate*. While Plaintiffs believe, as noted below, that the *Medina* decision is legally flawed, it nonetheless presents a barrier to successful litigation of this action.

To prevail in the litigation, Plaintiffs would first have needed to prevail in the pending appeal. Realistically, this step alone would have taken between one and two years.  Because the case was decided on a motion to dismiss, a remand would in effect start the case over. Plaintiffs would still have to overcome other defense motions, conduct discovery, certify a class, prevail at summary judgment and then trial—only to face another round of appeals. Each step in the process represents substantial additional time and expense.

While the time and expense involved in litigating the case would be substantial, the more important factor in assessing the adequacy of the Settlement is the risk that years of additional litigation would produce no benefit to the Class.  *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140,

1150 (8th Cir. 1999) (merits of plaintiffs' case are the most important consideration in deciding whether a settlement is fair, reasonable, and adequate).

The first step in determining if a settlement is fair involves analyzing the strength of the plaintiff's case to establish the value of class members' claims.  "This is not a simple mathematical exercise with definite outcomes; a 'high degree of precision cannot be expected in valuing a litigation.'"  *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 943 (D. Minn. 2016) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)).  Courts perform a "ballpark valuation." *Synfuel Techs.*, 463 F.3d at 653 (citation omitted).  In doing so, the court "does not try the case," but instead identifies the disputed factual and legal issues that make it less likely for the plaintiffs to receive a full recovery.  *Ramsey*, 2012 WL 6018154, at *3 (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)).  "If the plaintiff class faced a strong unlikelihood of success, or an initial defeat followed by another round at the appellate level, virtually any benefit inuring to the class would be better than the prospect of an ultimately unsuccessful litigation." *Id.* at *3 (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995)).

Here, of course, Plaintiffs failed to survive the first hurdle of the litigation—the Court granted Defendants' Motion to Dismiss. ECF No. 101.  To overcome this loss would have required success in their pending appeal, ***followed by*** success in each subsequent stage of the litigation. While Plaintiffs believe that the Eighth Circuit should reverse the dismissal, the outcome of their appeal is not assured.  *See Thole v. U.S. Bank, N.A.*, 873 F.3d 617 (8th Cir. 2017), *petition for cert. filed* (No. 17-1712).[8]  Assuming Plaintiffs successfully litigate the

---

[8] The Solicitor General has been invited to express the views of the United States on whether certiorari should be granted.  *Thole v. U.S. Bank, N.A.*, 139 S. Ct. 306 (2018).

contested standing issue, success on the merits stage of the litigation is not without risk.  In late

2017 the Tenth Circuit Court of Appeals decided *Medina*, which rejected several theories of

liability in another "church plan' case.  877 F.3d 1213.  *Medina* was decided on different facts

than those before this Court; Plaintiffs believe its legal analysis was flawed; and in any event it is

not binding on this Court.  It does, however, illustrate the litigation risk this Settlement avoids. In

light of this uncertain and high-stakes backdrop, the proposed Settlement is an exceptional result

for the Class.

### b.  Effective Methods of Settlement Distribution

Rule 23(e)(2)(C)(ii) focuses on whether funds collected through the settlement are

distributed effectively.  The adequacy of this Settlement with respect to this issue is clear.  The

bulk of the Settlement—between $50 million and $60 million—will be paid to the Plans directly,

improving the solvency of the trust fund on which all current Plan participants' retirement

payments depend.  Furthermore, the Settlement provides that eligible participants as described in

the Settlement Agreement who cashed out of the Plans through a lump-sum distribution will

receive a payment of $115 within thirty (30) days of the Effective Date of the Settlement.

Exhibit 1 § 7.1.2.  The payment will be made by check and sent to the last-known address of the

affected Class Members, most of whom are identified in Exhibit A to the Settlement Agreement.

Exhibit 1 at Ex. A.  No Class members will be required to file claim forms of any sort.

### c.  Provisions Relating to Attorneys' Fees

Nothing in the Settlement provisions related to attorneys' fees should call into question

the adequacy of the Settlement.  The Settlement is not contingent on Class Counsel receiving a

specific amount of fees and any fees they receive will be determined by the Court.  Exhibit 1

§ 7.1.5.  *Adams*, 2016 WL 7664135, at *6 (noting with approval settlement provision clearly

stating the amount of any award of attorneys' fees was "not set by the settlement but will be

determined by petition to the Court").  The fees will be paid by Defendants and will not reduce

the amounts that will be paid to the Plans or to former participants who took lump sum

payments.  Section 7.1.5 of the Settlement capped the total amount that Class Counsel could

request without drawing an objection from Defendants; the cap was negotiated after negotiation

on all the key terms of the Settlement were complete, and is based on a proposal from the

mediator.  Exhibit 3 ¶ 30.

      Class Counsel has requested that the Court award a fee of $449,982.59.  The

reasonableness of this requested fee, pursuant to the standards that govern such awards, is

addressed at length in Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of

Expenses, and for Incentive Awards to Named Plaintiffs, which will be filed together with this

Final Approval Memorandum.  For purposes of analyzing whether the fee request suggests some

deficiency in the adequacy of the Settlement itself, it is sufficient to note that the requested fee is

reasonable and consistent with or lower than the awards in other ERISA "church plan" cases.

*See, e.g.*, Order & Final Judgment ¶ 18, *In re Mercy Health ERISA Litig.*, No. 16-441 (S.D. Ohio

Nov. 28, 2018), ECF No. 107 ($780,000 attorneys' fee award); Order & Final Judgment ¶ 21,

Order & Final Judgment, *Nicholson v. Franciscan Missionaries of Our Lady Health Sys.*, No.

16-258 (M.D. La. Feb. 6, 2018) ($1 million attorneys' fee award); *Garbaccio v. St. Joseph's

Hosp. & Med. Ctr. & Subsidiaries*, No. 16-2740 (D.N.J. Mar. 6, 2018), ECF No. 116 ($2.4

million attorneys' fee award); Order & Final Judgment ¶ 9, *Hodges v. Bon Secours Health Sys.,

Inc.*, No. 16-1079 (D. Md. Dec. 21, 2017), ECF No. 117 ($3.4 million attorneys' fee award);

Order & Final Judgment ¶ 10, *Lann v. Trinity Health Corp.*, No. 14-2237 (D. Md. May 31,

2017), ECF No. 111 ($7.6 million attorneys' fee award); *Kemp-DeLisser v. Saint Francis Hosp.

& Med. Ctr.*, No. 15-1113, 2016 WL 6542707, at *19 (D. Conn. Nov. 3, 2016) ($800,000

17

attorneys' fee award); Order & Final Judgment ¶ 8, *Tucker v. Baptist Health Sys., Inc.*, No. 15-382 (N.D. Ala. June 26, 2017), ECF No. 62 ($820,000 attorneys' fee award).[9]

### 3.   The Settlement Treats the Settlement Class Equitably Relative to Each Other

The proposed Settlement treats Class Members equitably relative to each other.  The primary benefit of the Settlement is the additional money that will be provided to the Plans, together with the ten-year guarantee.  These provisions will benefit all current Plan participants equally by providing greater assurance that they will receive the full amount of benefits that they are owed under the Plans.  Although former Plan participants who took a lump sum payment will not receive any benefit from the provisions that affect the Plans on a going-forward basis, eligible class members as described in the Settlement Agreement will be compensated by receiving the $115 payments by check.  The benefit that they receive is different from the benefits that current participants will receive, but this difference is logically grounded in their different circumstances and the difference in the nature of their claims.  Unlike current Plan participants, they face no threat of a loss of benefits if the Plans' trust fund becomes depleted. They received the bulk of the money that they were owed, but they would have received a larger amount had the Plans employed the actuarial standards for calculating the amount of their lump sum payments that are mandated by ERISA.  Am. Compl., Count IV.  Settlements need not treat all class members the same, and it is appropriate for a settlement to provide different benefits for segments of the class that have different claims.  *Schwartz v. TXU Corp.*, No. 02-2243, 2005 WL 3148350, at *23 (N.D. Tex. Nov. 8, 2005); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d

---

[9] Rule 23(e)(2)(C)(iv) requires that "[i]f the proposal would bind class members," as this one does, the court must take into account "any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(3), in turn, requires the parties seeking approval of the proposal to "file a statement identifying any agreement made in connection with the proposal." There are no such agreements here; the only agreement in connection with the proposal is the Settlement Agreement itself. Exhibit 3 ¶ 90.

297, 351 (E.D.N.Y. 2010); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 252 (D.N.J. 2000).

The Settlement also does not unduly favor the Named Plaintiffs, who *may,* if the Court elects to approve it, receive a modest award of $3,000 for their efforts on behalf of the Class. *See*, *e.g.*, *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (affirming decision to give case contribution awards of $10,000 to each of the plaintiffs); *see also Martinez v. Medicredit, Inc*., No. 16-1138, 2018 WL 2223681, at *5 (E.D. Mo. May 15, 2018) (awarding class representatives $7,500 each for their contributions); *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016) (awarding each class representative $25,000); *Prater v. Medicredit, Inc*., No. 14-159, 2015 WL 8331602, at *4 (E.D. Mo. Dec. 7, 2015) (awarding incentive award of $20,000); *Lees v. Anthem Ins. Cos.*, No. 13-1411, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (awarding $10,000 to plaintiff); *Risch*, 2012 WL 4357953, at *3  (awarding incentive award of $5,000); *Simmons v. Enter. Holdings, Inc*., No. 10-625, 2012 WL 2885919, at *2 (E.D. Mo. July 13, 2012) (awarding incentive awards of $6,000). *See also* Feather Decl., Exhibit 4; Beiermann Decl., Exhibit 5; and Pyatt Decl., Exhibit 6.

### 4.   Reaction by the Settlement Class

Although amended Rule 23(e)(2) does not address the response of Class Members to the settlement, courts have generally considered their reaction when deciding approval.  *See, e.g.*, *Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) (small number of objections relative to a large class "speaks well of class reaction to the Settlement" and provides support for approval).  As noted above, the deadline for filing objections has not yet passed, but as of the date of the filing of this Memorandum, zero settlement Class members, out of a total Class of more than 65,000, have filed objections.  Exhibit 3 ¶ 98. This provides additional support for approval of the

Settlement, especially when considered with the facts discussed above in the Rule 23(e)(2) analysis.

## IV.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

For settlement purposes only, Plaintiffs seek certification of a Settlement Class composed of "all vested or non-vested present and past participants of the Plans (and their beneficiaries) as of September 6, 2017." Exhibit 1 § 1.19.  Certification of the Settlement Class in this Action is warranted for numerous reasons.  As an initial matter, before preliminarily approving the Settlement, this Court examined the record and preliminarily certified the Settlement Class pursuant to Rule 23(b)(1) and (b)(2).  *See* Prelim. Approval Order ¶¶ 3(a)-(b), 4.  Nothing has changed to compel the Court to now reach a different conclusion at the final approval stage. Indeed, Plaintiffs' ERISA claims are well-suited for certification.

Class certification for settlement purposes under Rule 23 entails a two-step analysis. First, the Court must determine whether Rule 23(a)'s prerequisites are met, which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Next, the Court must determine whether Plaintiffs have met the requirements of Rule 23(b).  *See*, *e.g.*, *Wildman v. Am. Century Servs., LLC*, No. 16-737, 2017 WL 6045487, at *2 (W.D. Mo. Dec. 6, 2017). Here, Plaintiffs satisfy the prerequisites of Rule 23(a) as well as the requirements of Rule 23(b)(1).

## A.  Rule 23(a)'s Requirements are Satisfied

### 1.   Numerosity

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This threshold is easily met, as over 65,000 Class members were sent copies of the Class Notice.  Exhibit 2 ¶¶ 13-15; Exhibit 3 ¶¶ 49-50.  *See Speer v. Cerner Corp.*, No. 14-204, 2016 WL 5444648, at *5 (W.D. Mo. Sept. 27, 2016)

(numerosity met when there were thousands of proposed class members). Accordingly, numerosity is satisfied.

### 2. Commonality

The commonality requirement set forth in Rule 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is typically present in ERISA cases because the "appropriate focus . . . is the conduct of the defendants, not the plaintiffs." *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 209 (W.D. Mo. 2006) (quoting *In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, 422 (N.D. Okla. 2005)). Here, there are common questions concerning whether the Plans qualify as "church plans" which would make them exempt from ERISA, and whether Defendants have failed to administer and to enforce the funding obligations of the Plans in accordance with ERISA. These issues are common to the Settlement Class satisfying Rule 23(a)(2). Although the members of the Settlement Class are not all participants or beneficiaries of the *same* plan, there are no differences between the Plans that are material to Plaintiffs' claims. Thus, Defendants' policy and practice of treating the Plans as being exempt from ERISA under the "church plan" exemption, and the legal claims that flow from that treatment, are common to the Settlement Class.

### 3. Typicality

The commonality and typicality requirements are "closely related." *Newman v. CheckRite Cal., Inc.*, No. 93-1557, 1996 WL 1118092, at *5 (E.D. Cal. Aug. 2, 1996) (citing H. Newberg, *Class Actions*, § 3.13 (1977)). A finding of commonality often fulfills the typicality requirement as well. *See id.* Typicality requires that "the claims or defenses of the representative parties are typical" of those of the class. Fed. R. Civ. P. 23(a)(3). This requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d

at 1174 (citation omitted); *Wildman*, 2017 WL 6045487, at *4 (citation omitted).  "[I]f the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal theory or remedial theory" individual factual variations will not normally defeat class certification. *Bradford v. AGCO Corp.*, 187 F.R.D. 600, 603 (W.D. Mo. 1999) (citing *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 831 (8th Cir. 1977)). This is especially true in ERISA cases where plaintiffs raise claims on behalf of the plan. *Tussey v. ABB, Inc.*, No. 06-4305, 2007 WL 4289694, at *3 (W.D. Mo. Dec. 3, 2007).

Plaintiffs are all participants in one or more of the Plans.  As noted above, the provisions of the Plans that are relevant to this litigation are the same.  Thus, Plaintiffs' claims are typical of the claims of all participants in the Plans because they arise from Defendants' policy and practice of refusing to operate the Plans in accordance with the requirements of ERISA, based on the common assertion that the Plans qualify for the church plan exemption.  Based on these facts and allegations, Plaintiffs satisfy the typicality requirement of Rule 23(a)(3). *See, e.g.*, *Meyers v. Dtna Trucks N. Am., LLC*, No. 14-2361, 2014 WL 12531121, at *6 (W.D. Tenn. Oct. 8, 2014) (finding typicality satisfied, noting "[t]he Class Representatives' claims arise from the same course of conduct that gives rise to the other Proposed Class members' claims and are based on the same legal theory").[10]

### 4.  Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this requirement, Plaintiffs must demonstrate that (1) they "will vigorously prosecute the interest of the class

---

[10] Although it is not a requirement for class certification under Rule 23, the Settlement Class is clearly ascertainable here as it is defined by objective criteria—participation in the Plans during the defined class period. Defendants have lists of such participants throughout the class period.

through qualified  counsel" and (2) they "have common interests with the members of the

class." *Paxton v. Union  Nat'l Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982) (citation omitted).

The second prong of the "adequacy" requirement largely overlaps with the commonality and

typicality requirements of Rule 23(a)(2) and, as discussed above, Plaintiffs' interests are squarely in

line with those of the proposed Settlement Class.  Their claims, like the claims of other Settlement

Class members, arise from the same event, practice and/or course of conduct—namely, Defendants'

failure to administer and fund the Plans in accordance with ERISA. Plaintiffs' claims are also typical

because all Class members are similarly affected by Defendants' conduct, and all Class members

seek the same relief on behalf of the Plans. Moreover, the first prong is also met because Plaintiffs

have contributed to the efficient prosecution of this litigation evidenced by providing documents and

information to Class counsel for preparation of the complaints, their regular communications with

counsel and their participation in the settlement process.  Plaintiffs were prepared to make

themselves available for a deposition by Defendants if the case proceeded into discovery and to

appear at trial.  Feather Decl., ¶¶ 7-9 Exhibit 4; Beiermann Decl., ¶¶ 7-8 Exhibit 5; and Pyatt

Decl., ¶¶ 7-9 Exhibit 6. Plaintiffs thus satisfy Rule 23(a)(4).[11]

## B.  The Settlement Class Satisfies the Requirements of Rule 23(b)

Plaintiffs' claims  should  be  certified  under  Rule  23(b)(1).  That  Rule  provides  for

certification where:

> the prosecution of separate actions by . . . individual members of the
> class would create a risk of (A) inconsistent or varying adjudications
> . . . which would establish incompatible standards for the party
> opposing the class, or (B) adjudications  with  respect  to  the
> individual members of the class which would be dispositive of the
> interest of the other members not parties to the adjudications.

---

[11] While the adequacy of the named plaintiffs is governed by Rule 23(a)(4), the adequacy of counsel is governed by Rule 23(g). *See* Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment. Accordingly, Class Counsel's adequacy is discussed *infra* in Section IV.C.

Fed. R. Civ. P. 23(b)(1)(A), (B). Rule 23(b)(1)(A) "attempts to avoid possible prejudice to

Defendants, while subsection B attempts to avoid possible prejudice to class members." *Jones v.*

*Novastar Fin., Inc.*, 257 F.R.D. 181, 193 (W.D. Mo. 2009) (citing *In re IKON Office Sols.*, 191

F.R.D. 457, 466 (E.D. Pa. 2000)). In both cases, the court is concerned with the problems that

would be caused if each potential class member were free to pursue his or her own lawsuit.

There is a clear risk of inconsistent adjudication and incompatible standards here: in the

absence of certification, two participants could bring identical actions and achieve different

results, with one court holding that the Plans are ERISA-regulated, and the other holding that

they are not. *See, e.g.*, *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 577 (D. Minn. 2014)

(holding that certification under Rule 23(b)(1)(A) was appropriate where "separate lawsuits by

various individual Plan participants to vindicate the rights of the Plan could establish

incompatible standards to govern Defendants' conduct"). Moreover, the Rule 23 advisory

committee noted that "an action which charges a breach of trust . . . by [a] . . . fiduciary similarly

affecting the members of a large class of . . . beneficiaries" calls for certification under this

section. *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-34 (1999) (citing same). Many

decisions recognize that "[i]n light of the derivative nature of ERISA § 502(a)(2) claims, breach of

fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate

for certification as a Rule 23(b)(1) class, as numerous courts have held." *Griffin v. Flagstar*

*Bancorp, Inc.*, No. 10-10610 2013 WL 6511860, at *6 (E.D. Mich. Dec. 12, 2013) (citing *In re*

*Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (collecting cases)); *Yost v.*

*First Horizon Nat'l Corp.*, No. 08-2293, 2011 WL 2182262, at *13 (W.D. Tenn. June 3, 2011)

(same); *Shanehchian v. Macy's, Inc.*, No. 07-828, 2011 WL 883659, at *10 (S.D. Ohio Mar. 10,

2011) (same).  Because Plaintiffs pursue claims in a representative capacity in accordance with

24

ERISA's remedial provisions, this case is particularly appropriate for class action treatment under Rule 23(b)(1). *Smith v. Aon*, 238 F.R.D. 609, 617 (N.D. Ill. 2006). Indeed, the advisory committee's notes to Rule 23 instruct that certification under Rule 23(b)(1)(B) is appropriate in "***an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust***." Fed. R. Civ. P. 23(b)(1)(B) advisory committee's note to 1966 amendment (emphasis added).

The Settlement Class may also be certified pursuant to Rule 23(b)(2). "Rule 23(b)(2) authorizes a class action if 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Meyers*, 2014 WL 12531121, at *7 (citing Fed. R. Civ. P. 23(b)(2)). As the Supreme Court explained in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011):

> The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.

564 U.S. at 360 (citation omitted). Here, Plaintiffs allege that Defendants breached their fiduciary duties to the Plans and their participants by improperly relying on the "church plan" exemption rather than complying with ERISA and seek equitable relief on behalf of the Plans as a whole. Such equitable remedies are specifically authorized by ERISA. *See* ERISA §§ 502(a)(2), (3), 29 U.S.C. § 1132(a)(2), (3).

Accordingly, Plaintiffs' claims are properly certified under either subsection of Rule

23(b)(1), or under both.[12]

## C. The Court Should Confirm Its Earlier Appointment of Counsel to Represent the Settlement Class

Rule 23(g) governs the appointment of class counsel.  The rule identifies four specific

factors that should be considered, together with any other matter pertinent to counsel's ability to

fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1). The four

specific factors are:  (i) the work counsel did in identifying or investigating potential claims in

the action; (ii) counsel's experience in handling class actions, other complex litigation, and

claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv)

the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-

(iv).

In this case, the Court appointed interim class counsel on August 31, 2017.  ECF No. 75

(appointing Keller Rohrback and KTMC as Interim Lead Class Counsel Committee Co-Chairs,

Cohen Milstein and IKR as Interim Lead Class Counsel Committee Members, and Armstrong

Law Firm LLC as Interim Liaison Class Counsel).  Since their appointment, Interim Class

Counsel have, as promised, committed significant resources to the litigation of the case, filed an

Amended Complaint based on further investigation of potential claims, briefed the adequacy of

---

[12] It is not uncommon for courts to certify ERISA class actions under both subsections of Rule 23(b)(1). *See, e.g.*, *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 379 (S.D. Ohio 2006) ("Here, Plaintiffs' ERISA claims will, as a practical matter, adjudicate the interests of all plan participants.  If this case was adjudicated individually and relief was granted in some actions but denied in others, the conflicting declaratory and injunctive relief could make compliance impossible for Defendants.  Thus, certification under Rules 23(b)(1)(A) and (B) is appropriate."); *Yost*, 2011 WL 2182262, at **13-14 (certifying class under Rule 23(b)(1)(A) and 23(b)(1)(B)); *Smith*, 238 F.R.D. at 617; *Rankin v. Rots*, 220 F.R.D. 511, 522 (E.D. Mich. 2004); *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 173-74 (E.D. Pa. 2009); *Nortel Networks Corp. ERISA Litig.*, No. 03-md-1537, 2009 WL 3294827, at *16 (M.D. Tenn. Sept. 2, 2009); *Jones*, 257 F.R.D. at 193-94.

the allegations of the Amended Complaint, participated in a successful mediation, and negotiated the terms of a proposed settlement for consideration by the Court and the Settlement Class. Accordingly, the Court should confirm its prior appointments to represent the Settlement Class.

## V.  THE COURT SHOULD FIND THAT THE CLASS RECEIVED ADEQUATE  NOTICE

The Class must receive due and adequate notice of a settlement and an opportunity to be heard.  Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Petrovic*, 200 F.3d at 1153 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Here, the form and method of Class Notice satisfied all due process considerations and Rule 23(e)(1). The Class Notice provided the Class members with information about the Action and the terms of the proposed Settlement, including how and when to file an objection, so that they could protect their rights.  The Notice provided the information in a clear, concise manner.  *See Petrovic*, 200 F.3d at 1153; *Cullan & Cullan LLC v. M-Qube, Inc.*, No. 13-172, 2016 WL 5394684, at *7 (D. Neb. Sept. 27, 2016) (approving notice when it was "written in plain English and [was] designed to be read and understood").

The method of giving notice—first-class mail to the last-known addresses of Class members—was also designed to reach all Class members.  *Mullane*, 339 U.S. at 315.  Over 65,000 Class members were mailed the Class Notice in accordance with the Preliminary Approval Order.  Exhibit 2 ¶¶ 13-15.  The Class Notice was substantially in the form approved by this Court in the Preliminary Approval Order and alerted the Class not only to the key terms of the Settlement, but also of their right to object. Exhibit 7. The Class Notice also directed participants to a website: www.kellersettlements.com, which includes links to the relevant filings pertaining to the Settlement. *Id.* at 2. A toll-free telephone number was also established, *id.*, and

27

Class Counsel received and responded to 187 telephone calls and emails from Class members. Exhibit 3 ¶ 51.

Because both the form and method of providing notice was calculated to ensure that the Class Members received the information they needed to understand the Action and make an informed decision concerning the Settlement, the Court should find that the requirements for giving notice to the Class have been satisfied.

### VII.    CONCLUSION

For the reasons set forth above, Plaintiffs seek an Order (attached as Exhibit 8): (1) approving the Settlement under Rule 23(e); (2) certifying the Settlement Class for settlement purposes; (3) confirming the appointment of Class Counsel; and (4) approving the Class Notice as having met due process.

DATED:  MAY 6, 2019                          **KELLER ROHRBACK L.L.P.**

*/s/ Laura R. Gerber*
Laura R. Gerber
Lynn Lincoln Sarko
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel.: (206) 623-1900
lgerber@kellerrohrback.com
lsarko@kellerrohrback.com

**KELLER ROHRBACK L.L.P.**
Ron Kilgard
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel.: (602) 248-0088
rkilgard@kellerrohrback.com

**KESSLER TOPAZ MELTZER
  & CHECK, LLP**
Mark K. Gyandoh
280 King of Prussia Road
Radnor, PA 19087
Tel.: (610) 667-7706

28

mgyandoh@ktmc.com

*Settlement Class Counsel Committee Co-Chairs*

**COHEN MILSTEIN SELLERS
  & TOLL PLLC**
Karen L. Handorf
Michelle Yau
Mary J. Bortscheller
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Tel.: (202) 408-4600
khandorf@cohenmilstein.com
myau@cohenmilstein.com
mbortscheller@cohenmilstein.com

**IZARD, KINDALL & RAABE, LLP**
Douglas P. Needham
Mark P. Kindall
Robert A. Izard
29 South Main Street
West Hartford, CT 06107
Tel.: (860) 493-6292
dneedham@ikrlaw.com
mkindall@ikrlaw.com
rizard@ikrlaw.com

*Settlement Class Counsel Committee Members*

**ARMSTRONG LAW FIRM LLC**
Matthew H. Armstrong
8816 Manchester Road, No. 109
St. Louis, MO 63144
Tel.: (314) 258-0212
matt@mattarmstronglaw.com

*Liaison Counsel for the Settlement Class*